UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN ANDREW QUASNEY,

                Petitioner,                Case No. 05-74895
                                                Honorable Paul D. Borman

v.


DOUG VASBINDER,

                Respondent.
_____/


**OPINION AND ORDER DENYING PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**


**I. Introduction**

       Petitioner John Andrew Quasney has filed a *pro se* petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, alleging that he is being held in violation of his constitutional

rights. On January 10, 2000, Petitioner pleaded guilty in Oakland County, Michigan, Circuit

Court, to (1) four counts of armed robbery, MICH.COMP.LAWS § 750.529, (2) one count of

unarmed robbery, MICH.COMP.LAWS § 750.530, and, (3) one count of assault-with-intent-to-rob-

while-armed, MICH.COMP.LAWS § 750.89. Petitioner's pleas were entered pursuant to a *Cobbs*[1]

agreement, with a minimum sentence of seven years. The sentencing guidelines were scored

eighty-one to one-hundred-thirty-five months. In his pleadings, Petitioner argues the following:

(1) the trial court usurped the exclusive authority of the prosecutor in amending the criminal

charges after a plea of guilty had been entered, (2) the plea of guilty was entered without

_____

      [1]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993).

Petitioner receiving proper notice and an opportunity to be heard, (3) Petitioner's due process rights were violated as a result of a waiver that was not knowingly, voluntarily, understandingly, or intelligently made, (4) Petitioner's Fifth Amendment rights against double jeopardy were violated, and (5) Petitioner's counsel was ineffective. Respondent has filed a response to the petition, contending that Petitioner's claims are procedurally defaulted.

In reviewing the pleadings in this matter, the Court notes that, at the time of writing this opinion, Petitioner has been on parole status from his Michigan Department of Corrections placement, beginning November 21, 2006. *See* Offender Tracking Information System ("OTIS") Offender Profile. Petitioner's supervision discharge date is November 21, 2008. For the reasons stated below, Petitioner's request for habeas relief is denied and his petition for a writ of habeas corpus is dismissed.

## II. Facts

As stated above, on January 10, 2000, Petitioner pleaded guilty to four counts of armed robbery, one count of unarmed robbery, and one count of assault-with-intent-to-rob-while-armed, pursuant to a *Cobbs* agreement. According to the agreement, the minimum sentence was seven years and, if the circuit court did not abide by that sentence, then Petitioner would have been permitted to withdraw his plea and proceed to trial. The circuit court advised Petitioner that the *Cobbs* evaluation exceeded the sentencing guidelines. Petitioner's defense counsel acknowledged that fact but nevertheless indicated that Petitioner still wanted to proceed with the sentencing.

The circuit court followed the *Cobbs* agreement and sentenced Petitioner to seven-to-twenty-years imprisonment for each of the armed-robbery convictions, seven-to-twenty-years

imprisonment for the assault-with-intent-to-rob-while-armed conviction, and four-to-fifteen-years imprisonment for the unarmed-robbery conviction, all sentences to run concurrently.

Petitioner then filed several motions with the circuit court–one through defense counsel, to withdraw pleas, to dismiss, and for resentencing–and one *pro per*, indicating his desire to not withdraw his pleas. In the remaining motions, Petitioner argued that his convictions violated double jeopardy, as there was only one offense and one victim. Petitioner also argued that his attorney was ineffective for failing to file a motion to dismiss on the basis of double jeopardy. The circuit court denied Petitioner's motions stating:

> [Petitioner] argues that in case number 99-169595-FC, Count I and II violate double jeopardy, because his acts constituted only one offense. Defendant asserts that one count should be dismissed. Defendant also argues that he is entitled to re-sentencing, because of inaccurate information in the PSI. In addition, [Petitioner] contends that PRV 2 and 6 were improperly scored and that he is entitled to a statutory reduction in the guidelines because he took responsibility for the offenses. [Petitioner] also argues that he is entitled to specific performance because the trial court violated the Cobbs [sic] agreement.

> The People admit that [Petitioner] was improperly charged. The People assert that [Petitioner] should have been charged with one count of Robbery Armed and one count of Attempted Robbery Armed or Assault[-]with[-]Intent[-]to[-]Rob. The People admit that [Petitioner] is entitled to an amended information, charging Assault[-]with[-]Intent[-]to[-]Rob[-]While[-]Armed. The People argue that [Petitioner] is not entitled to a dismissal of the second count of Armed Robbery. The People also deny that Defendant is entitled to re-sentencing.

ANALYSIS

> On case number 99-169595-FC, the Court finds that [Petitioner] was improperly charged with the second count of Armed Robbery. However, the Court finds that [Petitioner] is not entitled to a dismissal of the second count. [Petitioner] threatened two victims with a tire iron while demanding money, but only one victim actually handed money to the [Petitioner]. Had [Petitioner] requested a preliminary examination, the magistrate would have been obligated to amend the charge to Assault[-]with[-]Intent[-]to[-]Rob[-]While[-]Armed. At the preliminary examination, [Petitioner] would not have been entitled to a dismissal

of the charge. Therefore, this Court will issue an amended judgment of sentence reflecting one count of Armed Robbery and one count of Assault[-]with[-]Intent [-]to[-]Rob[-]while[-]Armed.

*People v. Quasney*, Nos. 99-169467-FC, *et. al.* (Oakland County Circuit Court, Nov, 21, 2001).

Subsequently, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the following claims:

> I.     Where, as here, [Petitioner] was charged with, in violation of double jeopardy, two counts of armed robbery when only one robbery was committed, and the trial court dismissed the second count, was it an abuse of discretion to amend the judgment to reflect a conviction for one count of assault[-]with[-]intent[-]to[-]rob[-]while[-]armed and should leave to appeal be granted.
>
> II.    Where, as here, [Petitioner] did not read his pre-sentence (PSIR) report prior to sentencing and the court imposed sentences on all counts based on inaccurate information contained in [Petitioner's] PSIR and misscorings of [Petitioner's] guidelines, is resentencing required and should leave to appeal be granted.[2]

On March 28, 2002, the Michigan Court of Appeals issued an order denying Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Quasney*, No. 238530 (Mich.Ct.App. Mar. 28. 2002).

Petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. On December 26, 2002, the Michigan Supreme Court denied Petitioner's delayed application for leave to appeal because the "Court of Appeals['] decision made no disposition relating to Oakland County Case No. 99-169595-FC. This Court's denial is without prejudice to the defendant's right to bring a motion for relief from judgment pursuant to MCR 6.502." *People v. Quasney*, 467 Mich. 925, 656 N.W.2d 521 (2002).

---

[2]Note: Petitioner did not raise an ineffective assistance of counsel claim.

In March 2004, Petitioner then filed a motion for relief from judgment in the Oakland

County Circuit Court, raising the following claims:

> I.    [Petitioner] was denied his constitutional right to effective assistance of counsel when his attorney failed to investigate and present, during the initial sentencing, substantial mitigating evidence of [Petitioner's] childhood abuse and psychological problems.
>
> II.    The failure of [Petitioner's] appointed appellate counsel to raise, on appeal of right, the meritorious issue presented in claim "I" denied him his constitutional right to effective assistance of counsel under (A) Article I, § 20 of the Michigan Constitution, and (B) the Fourteenth Amendment of the United States Constitution.
>
> III.    [Petitioner] has shown sufficient good cause for the failure to previous[ly] raise claim "I" herein and sufficient actual prejudice from the alleged irregularity to be entitled to consideration fo the claim.[3]

On June 28, 2004, the Oakland County Circuit Court denied Petitioner's motion for relief

from judgment. *People v. Quasney*, Nos. 99-169467-FC, *et. al.* (Oakland County Circuit Court,

June 28, 2004).

Thereafter, Petitioner filed a delayed application for leave to appeal from that decision in

the Michigan Court of Appeals, raising the following claims:

> I.    [Petitioner] was denied his state and federal rights to the effective assistance of counsel, in violation of [the U.S. Const., Am. VI]; Mich. Const., 1963, Art. 1, § 20, where; (A) [Petitioner] has presented new evidence showing that counsel was absent during [Petitioner's] circuit court arraignment and failed a forged waiver of arraignment form, and (B) where counsel failed to conduct any meaningful investigation prior to [Petitioner's] sentencing proceedings, where said investigation would have uncovered numerous substantial and compelling mitigating factors to be considered prior to [Petitioner] being sentenced.

---

[3]In his motion for post-judgment relief, Petitioner failed to raise his claims regarding case number 99-169595-FC.

II.      [Petitioner] was denied his state and federal rights to the effective assistance of counsel, in violation of [the U.S.Const., Am. VI]; the Mich. Const., 1963, Art. 1, § 20, where his appellate attorney failed to raise the enclosed meritorious issues which would have resulted in either a resentencing or evidentiary hearing on trial counsel's representation.

III.    The trial court erroneously ruled that the issues [Petitioner] brought forth in his motion for relief from judgment had already been decided by the courts and, therefore, this court may review these issues on the merits.[4]

On June 24, 2005, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Quasney*, No. 259152 (Mich.Ct.App. June 24, 2005). Petitioner then filed an application for leave to leave from that decision in the Michigan Supreme Court, raising the following claims:[5]

I.      Whether [Petitioner's] conviction and sentence is double jeopardy.

[]     [Whether there has been a] waiver of a constitutional right.

[]     [Whether the] trial court failed to bar introduction of mental disorder evidence.

II.     Whether the circuit court denied [Petitioner] due process in refusing to conduct a hearing.

III.    Whether the circuit court's jurisdiction is in error.

[]     [Whether there was] ineffective assistance of counsel.

---

[4]Again, Petitioner failed to raise his claims regarding case number 99-169595-FC in his delayed application for leave to appeal with the Michigan Court of Appeals.

[5]Only three issues are numbered–the other issues are not numbered but are included in the application for leave to appeal to the Michigan Supreme Court.

On November 29, 2005, the Michigan Supreme Court denied Petitioner's application for leave to appeal because Petitioner "failed to meet the burden of establishing relief under MCR 6.508(D)." *People v. Quasney*, 474 Mich. 938, 706 N.W.2d 23 (2005).

Petitioner filed the pending petition for a writ of habeas corpus on December 28, 2005, presenting the following claims:

> I. The state courts wrongly applied a procedural default upon [Petitioner] because the Michigan Court of Appeals, on direct appeal, avoided addressing one of [Petitioner's] cases, that of which demonstrates how the trial court did usurp the exclusive authority of the prosecutor in amending criminal charges after a plea of guilty had been entered.
>
> II. Whether [Petitioner] was given notice and a hearing.
>
> III. Whether [Petitioner's] due process rights were violated as a result of a waiver that could not have been knowingly, voluntarily, understandingly, or intelligently made.
>
> IV. Whether the Fifth Amendment prohibition against double jeopardy has been violated.
>
> V. Whether [Petitioner's] attorney provided him with effective assistance of counsel.[6]

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

[6]Petitioner's petition also includes issues listed as "Waiver" and "Separation of Powers Clause."

merits in State court proceedings unless the adjudication of the
claim–

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented at the
State court proceedings.

Under the "contrary to" clause in subsection (1), a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause in subsection (2), a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case presented. *Williams*, 529 U.S. at 407-08. Relief also is available under this clause if the state-court's decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court's decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court's decision is "contrary to" or an "unreasonable

application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

## IV. Analysis

In reviewing Petitioner's pleadings, it appears that Petitioner is only challenging claims associated with circuit court case number 99-169595-FC, where he was charged with two counts of armed robbery, pleaded guilty to those two counts, and was sentenced to seven-to-twenty years imprisonment for each of those counts. To the extent that Petitioner now raises these claims, which were not raised in his initial delayed application for leave to appeal in the state-appellate courts, such claims are procedurally defaulted. These claims include Petitioner's ineffective-assistance-of-counsel claim, his guilty-plea claim, and his separation-of-powers claim. Petitioner raised these claims for the first time in his motion for relief from judgment.

## A. Procedural Bar

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state-court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually

enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir.2001). Furthermore, to find that a petitioner has procedurally defaulted a particular claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir.2000).

If a petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish the existence of cause and prejudice for his procedural default, or if a fundamental miscarriage of justice would result from the failure to grant the relief he seeks. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Coleman*, 501 U.S. at 750-51; *Buell*, 274 F.3d at 348.

With respect to cause, a petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish that a miscarriage of justice would result from a court's failure to review his procedurally defaulted claims, a petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The burden to make this showing rests with a petitioner, *see Floyd v. Alexander*, 148 F.3d 615, 618 (6th Cir.1998), *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir.1997), who must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error probably resulted in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence."

*Id.* at 326. This requires a petitioner to overcome a hurdle higher than that to establish prejudice. *Id.*

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir.2002); *Simpson*, 238 F.3d at 407. Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues as to which it is applied. *Simpson*, 238 F.3d at 407.

As noted above, the claims asserted in Petitioner's petition for writ of habeas corpus were not asserted in his delayed application for leave to appeal in the state-appellate courts but were instead first advanced by him in his attempt to secure post-conviction relief in the state courts. The Michigan Supreme Court rejected those claims on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Petitioner has, therefore,

procedurally defaulted the claims asserted in his petition for writ of habeas corpus.

From Petitioner's pleadings it is not clear but it appears that he is attempting to argue that his default should be excused because his trial and appellate counsel both rendered ineffective assistance by failing to "recognize, object to and pursue" his claim that his guilty pleas were not made voluntarily, knowingly, or intelligently. While the ineffective assistance of counsel can "supply the cause that, together with prejudice, would excuse a procedural default," *see McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004), Petitioner cannot establish that his attorneys were ineffective for failing to challenge the validity of his guilty plea.

### 1. Ineffective Assistance of Counsel and Guilty Pleas Claims

To establish that he was denied the right to the effective assistance of counsel, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689.

Second, Petitioner must further establish that he suffered prejudice as a result of his attorney's performance. *See Strickland*, 466 U.S. at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir.1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the

hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (*en banc*), *cert. denied*, 508 U.S. 975 (1993); *see also*, *West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996). Here, because Petitioner's claim, that his guilty pleas were invalid, is without merit, he cannot demonstrate that his attorney was ineffective for failing to pursue such.

It appears that Petitioner is attempting to assert that his guilty pleas are not valid because he was not fully aware of the rights that he was relinquishing. As discussed below, the circuit court judge did, in fact, specifically advise Petitioner that by pleading guilty he would be surrendering his rights.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid, a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, that Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision, the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the

defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified that its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747, n. 4.

Other courts have since recognized that neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See*, *e.g.*, *Threadgill v. Galaza*, 2006 WL 2084165 (E.D.Cal. July 25, 2006) ("specific articulation of the *Boykin* rights is not the *sine qua non* of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 (9th Cir. June 4, 1992) ( "*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 (D.Conn., Feb.13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure . . . to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question presented by Petitioner's claim is not whether the circuit court judge specifically articulated or identified for Petitioner a list of the various rights

he would be surrendering by pleading guilty.  Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir. Aug.6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31(1970)).  Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994).

At the plea hearing in this case, the circuit court judge questioned Petitioner, at length, regarding his decision to plead guilty.  The following colloquy took place between Petitioner and the circuit court judge:

> THE COURT:  Has there been any undue influence, compulsion or duress used against you to force you to plead guilty?
> THE DEFENDANT:  No.
> THE COURT:  Have there been any promises whatsoever to induce this plea, other than the <u>Cobb's</u> (sic) agreement set forth on the record by the Court this morning?
> THE DEFENDANT:  No.
> THE COURT:  Has anyone threatened you to force you to plead guilty?
> THE DEFENDANT:  No.
> THE COURT:  Do you understand that once your plea is accepted, you'll be giving up any claim that the plea is the result of promises or threats that you're not telling me about right now?
> THE DEFENDANT:  I understand.
> THE COURT:  Do you understand that once your plea is accepted, you'll be giving up any claim that it's not your own choice to plead guilty?
> THE DEFENDANT:  Yes.
>
> THE COURT:  Is it your own choice to plead guilty?
> THE DEFENDANT:  Yes.

* * *

THE COURT: Therefore, the Court is satisfied that the Defendant's plea is knowingly, voluntarily and accurately made. I accept same.

\* \* \*

THE COURT: What happened on information ending 95-FC that makes you think you're guilty?

THE DEFENDANT: I walked into a Blockbuster late at night.

THE COURT: What city or township?

THE DEFENDANT: Royal Oak.

THE COURT; And what did you do?

THE DEFENDANT; Told the individual that this was a robbery and demanded money–

THE COURT: Okay.

THE DEFENDANT: The one person couldn't open the register and so she called on the other one to open the register.

THE COURT: So there were two employees there?

THE DEFENDANT: Yes.

THE COURT: Did you have a weapon?

THE DEFENDANT: Yes.

THE COURT: What kind of weapon?

THE DEFENDANT: Tire iron.

THE COURT: What did you do with it?

THE DEFENDANT: Showed it.

THE COURT: You held it up where each of the two individuals that were employees could see it?

THE DEFENDANT: Yes.

THE COURT: I can't hear you.

THE DEFENDANT: Yes.

THE COURT: And then what did you do?

THE DEFENDANT: Well, that was–well, I showed it to the first girl, and she called the second girl to open the register because she couldn't open it.

THE COURT: Then what happened?

THE DEFENDANT: Demanded money.

THE COURT: Then what happened?

THE DEFENDANT: Received the money and left.

\* \* \*

(Plea Hearing Tr., Jan. 10, 2000, 6-11,17-19).

Against that backdrop, the Court finds that it is apparent from the plea-hearing transcript that the circuit court judge questioned Petitioner at length regarding his decision to plead guilty.

-16-

In addition, Petitioner acknowledged that he is able to read, write, and understand the English language. *Id.* at 6. The circuit court judge explained to Petitioner every count with which he was charged and the possible penalty. *Id.* 5-25. Petitioner acknowledged that he understood the terms of his *Cobbs* agreement. *Id.* Therefore, it is clear from the record that Petitioner admitted the factual basis for every charge against him. *Id.*

Considering the totality of the circumstances, Petitioner's claim that his guilty pleas were not offered voluntarily, knowingly, and intelligently is without merit. Because this particular claim is without merit, Petitioner cannot establish that his attorney was ineffective for failing to challenge the validity of his guilty plea on direct appeal. The Court is precluded, therefore, under the procedural default doctrine, from addressing the merits of Petitioner's claim that his guilty pleas are constitutionally infirm. However, even were the Court to conclude that there existed good cause for Petitioner's failure to challenge the validity of his guilty pleas on direct appeal, the Court is nonetheless precluded from addressing the merits of Petitioner's claim because Petitioner cannot demonstrate that his attorney's failure to challenge the validity of his guilty pleas caused him to suffer prejudice.

As part of his *Cobbs* plea agreement, Petitioner receive a prison sentence, the minimum duration of which was seven years. Petitioner has presented no evidence from which it can reasonably be concluded that he would have obtained a more favorable sentence even had his attorney successfully challenged the validity of his guilty plea. Moreover, had Petitioner declined the plea agreement and been convicted at trial he could have then faced a term of life imprisonment. In sum, Petitioner cannot establish that he suffered prejudice as a result of his attorney's failure to challenge the validity of his guilty plea.

Furthermore, as noted in the circuit court's opinion and order dated November 21, 2001, Petitioner was not entitled to s dismissal of the second count of armed robbery. The facts underlying the offense that the circuit court referred to in its opinion are supported by the plea record; the circuit court found that Petitioner threatened two victims with a tire iron while demanding money. (Plea Tr., pp. 16-19.) The circuit court found, had Petitioner requested a preliminary examination, the Magistrate would have been obligated to amend the charge to assault-with-intent-to-rob-while armed–not a dismiss the armed-robbery charge. Therefore, the Court finds that Petitioner has not demonstrated that his attorney's performance was deficient; an attorney is not required to file a meritless motion. Even if the Court found that Petitioner's counsel's performance was deficient, Petitioner has failed to establish that there was a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial had there been an amendment to one of the charges in case number 99-169595-FC. As the circuit court noted, Petitioner, in his *pro per* supplemental brief to the circuit court, noted that he had no interest in withdrawing his plea. *Quasney*, No. 99-169467-FC, *et. al.*, slip op. at 4.

In conclusion, for the reasons articulated herein, Petitioner's claims of ineffective assistance of counsel are without merit and cannot, therefore, form the basis for habeas relief. Moreover, because these claims are without merit Petitioner cannot demonstrate cause and prejudice to overcome his procedural default. Accordingly, the Court is precluded from

addressing the merits of the claims asserted in his petition for writ of habeas corpus, as such claims are procedurally defaulted.

## 2.  Guilty Plea and Double Jeopardy

Ordinarily, a plea of guilt conclusively admits the defendant's guilt to the crimes
charged,
and any subsequent collateral attack upon that plea is limited to an inquiry as to whether it was
voluntarily and knowingly given.  *United States v. Broce*, 488 U.S. 563, 569 (1989).  In the
double jeopardy context, an exception to this rule exists when it is plain from the language of the
charging document that no legally cognizable additional crime was charged to which the
defendant could properly have entered a plea of guilt.  *Id.* at 576.  In all other respects, any right
to assert a claim of double jeopardy is waived by the entry of the guilty plea.  *Id.*

In *Broce*, *supra*, the defendant entered guilty pleas to two separate indictments alleging
conspiracies under the Sherman Act, 15 U.S.C. § 1, and later moved to vacate his sentences on
the basis that there was in reality only a single conspiracy, and therefore his right under the
Double Jeopardy Clause was violated.  The Supreme Court focused on the charging documents
to determine if the defendant's double jeopardy challenge survived his guilty plea.  The Court
noted: "Just as a defendant who pleads guilty to a single count admits guilt to the specified
offense, so too does a defendant who pleads guilty to two counts with facial allegations of
distinct offenses concede that he has committed two separate crimes."  *Broce*, 488 U.S. at 570.
The defendant's claim was premised on the contention that the two indictments alleged separate
parts of the same illegal agreement.  However, "[r]espondents had the opportunity, instead of
entering their guilty pleas, to challenge the theory of the indictments and to attempt to show the
existence of only one conspiracy in a trial-type proceeding.  They chose not to, and hence

relinquished that entitlement." *Id.* at 571.

In this case, the criminal information filed against Petitioner alleged two counts of armed robbery, one each against two separate victims. The elements of armed robbery in Michigan are "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich.App. 122, 123, 520 N.W.2d 672, 673 (1994); *see* MICH.COMP.LAWS § 750.529.

Here, the plea colloquy demonstrates that Petitioner admitted to walking into Blockbuster, pointed a tire iron at both employees, and directed them to hand over the money. The employees complied, and Petitioner left the store. (Plea Tr. pp. 17-19, dated Jan. 10, 2000.)

The transcript demonstrates that there were two individuals present, not one: the two employees. In such a situation, the Michigan Court of Appeals has made clear that two armed-robbery charges are properly brought. *See People v. Rodgers*, 248 Mich.App. 702, 645 N.W.2d 294 (2001). Moreover, the transcript reveals that Petitioner's pleas were voluntary, knowing, and intelligent. Petitioner was aware of the maximum sentences faced on the charges and stated that he wished to plead guilty to all counts. The circuit court then specifically advised Petitioner of the charges, of the maximum penalties he faced, and of the rights that he had and would be giving up by virtue of the plea. Petitioner stated that he was not threatened, forced, or improperly influenced into pleading guilty, and that he was given no promises–other than the *Cobbs* agreement–in order to plead guilty.

Although it appears that Petitioner is attempting to argue that the facts he admitted at the guilty-plea hearing did not establish that there were two victims in case number 99-169595-FC, rather, that there was one. Indeed, the record demonstrates the difficulty encountered in

questioning Petitioner on this point, portending, perhaps, a problem in proving anything more than an assault against the second person. Petitioner could have challenged the factual claim that there were two robbery victims, not one, in a trial proceeding, but chose instead to admit guilt to both counts. He may not now collaterally attach his guilty-plea-based conviction on double jeopardy grounds after having "relinquished that entitlement." *Broce*, 488 U.S. at 571.

Moreover, the circuit court judge, in Petitioner's post-conviction motion to dismiss and/or for resentencing, issued an amended judgment of sentence, reflecting one count of armed robbery and one count of assault-with-intent-to-rob-while-armed. Thus, Petitioner's claim regarding double jeopardy has no merit.

Petitioner maintains that his attorney was ineffective for failing to file a motion to dismiss on double jeopardy grounds in case number 99-169595-FC. However, the Court finds that Petitioner's claim was waived by his guilty plea, and, as stated above, Petitioner cannot demonstrate that his attorneys were ineffective. Therefore, Petitioner is not entitled to habeas relief on this claim.

## V. Conclusion

Based on the foregoing analysis, the Court concludes that the state-appellate courts' decisions were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Therefore, Petitioner is not entitled to habeas corpus relief.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas

claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed. In such a case, no appeal is warranted. *Id.*

The Court is satisfied that jurists of reason could not find the Court's ruling debatable. No certificate of appealability is warranted in this case. Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly,

**IT IS ORDERED** that Petitioner's petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 1, 2008

CERTIFICATE OF SERVICE

-22-

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 1, 2008.

S/Denise Goodine
Case Manager